Decided March 29, 1910.

**1.—Mortgage—Verbal Exception of Property.**

A mortgage described specifically three tracts of land, certain tanks, pipe lines, etc., and added, "also any and all other property, real, personal or mixed, now owned by the party of the first part, situated in Jefferson County;" the evidence showed that it was understood by the parties that the mortgage did not and was not intended to include certain tank cars owned by the mortgagor; upon default in the payment of the indebtedness secured by the mort-

gage, the trustees therein named sold the mortgaged property at public auction, and the mortgagee became the purchaser, and immediately transferred to a third party its rights under the bid. Held, the transferee of the bid acquired no right or title to the tank cars, but the title to the same and the right of possession remained in the mortgagor.

**2.—Receivership—Possession of Property—Conflicting Claims—Interpleader.**

When a railroad company is in possession as bailee of certain cars, the title to and right of possession of which is in dispute between the receiver of a corporation and another party, the railroad company will be allowed a reasonable time within which to determine its rights by filing a bill of interpleader in the receivership case, before being adjudged guilty of conversion of the cars by reason of a refusal to comply with a demand for possession by the party ultimately adjudged entitled to the same. In a suit by the receiver of a corporation against a railroad company for damages for conversion of cars, pleading and evidence considered, and held to support a judgment for the defendant.

**3.—Same—Order of Court—Complete Defense.**

Where, pending a receivership, there is a controversy between the receiver and a third party concerning the title and possession of certain cars then in the actual possession and use of a railroad company, an order by the court directing the railroad company to pay to the third party the mileage and revenues owing for the use of the cars, is a complete defense to a subsequent suit by the receiver against the railroad for said mileage and revenues paid in accordance with the order of the court.

Error from the District Court of Jefferson County. Tried below before Hon. L. B. Hightower, Jr.

*Robertson & Whitaker* and *Molette & Wilkerson,* for plaintiff in error.

*Baker, Botts, Parker & Garwood* and *Parker, Hefner & Orgain,* for defendant in error.

McMEANS, ASSOCIATE JUSTICE.—This suit was brought by R. E. Smith, receiver of the Equitable Land & Oil Company, against the Texas & New Orleans Railroad Company and Seymour Kisch, to recover damages for the conversion of seventy-five tank cars, alleged to be the property of the Equitable Land & Oil Company.

The petition is in two counts, the first charging a seizure and conversion of the cars and praying for judgment for their value; the second praying that if the court should find that, after the conversion of the cars by Kisch and his codefendant, there was a legal foreclosure of the lien of the American Car & Foundry Company, and a sale thereunder by which the title of the Equitable Land & Oil Company had been divested, then for a recovery of the value of the use of the cars from the date of conversion to the date of foreclosure, together with the depreciation in value of the cars between said dates.

The death of the defendant Seymour Kisch was suggested, and the suit abated as to him.

The Texas & New Orleans Railroad Company, after general denial, specially pleaded that it never had possession of said cars except as a common carrier to transport them over its lines when tendered to it

for transportation, and denied that it ever asserted any claim of ownership to the cars or control over them, and that it had been discharged from liability for their use or for mileage by the order of the court in the main receivership case, directing such mileage to be paid to Seymour Kisch on his giving bond. That Kisch had given the bond, and that the mileage had been paid to him.

On a former appeal of this case the judgment of the court below was affirmed by the Court of Civil Appeals of the Fourth District (105 S. W., 528). A writ of error was granted by the Supreme Court, and that court affirmed the judgment as to all defendants except the Texas & New Orleans Railroad Company and Seymour Kisch, and as to them the judgment was reversed and the cause remanded (101 Texas, 405). The last trial resulted in a verdict and judgment in favor of the Texas & New Orleans Railroad Company, from which the receiver has prosecuted this appeal.

The cars in controversy were purchased by the Equitable Land & Oil Company from the American Car & Foundry Company on October 31, 1901, upon a twenty-five percent cash payment, the balance to be paid in monthly installments, to secure which a lien on the cars was retained by the vendor.

On November 13, 1902, the Equitable Land & Oil Company executed to the National Supply Company a mortgage to secure the payment of a note to the latter company for the sum of $14,649.32. This mortgage, in specifying the property conveyed, described specifically three tracts of land, certain tanks, pipe lines, etc., and added, "also any and all other property, real, personal or mixed, now owned by the party of the first part, situated in Jefferson County, Texas." The evidence shows that it was understood by the parties that the mortgage did not, and was not intended to, include the cars, but that they were to be excepted therefrom. Default in the payment of the indebtedness due by the Equitable Land & Oil Company having been made, Ira C. Tabor, trustee, under the power given in the mortgage by which the debt was secured, sold the property therein described at public auction, and the Supply Company being the highest bidder therefor, it was knocked off to it. That company immediately transferred the rights which had accrued under the bid to Seymour Kisch, who assumed all its obligations under the bid. By virtue of this transaction Kisch got possession of the cars and thereafter asserted title thereto.

A short time after this sale R. E. Smith was appointed receiver, and he at once asserted his claim to the cars. At this time it seems that the cars were in the possession of the Texas & New Orleans Railroad Company, and that this company had received the cars from Kisch and was accounting to him for the value of their use. On August 5, 1903, demand was made by the receiver upon the railroad company for the possession of the cars, but the railroad company, on August 7, 1903, denied the receiver's right to the possession thereof and recognized Kisch as the owner.

The receiver, on August 12, 1903, filed in the receivership case a motion against Kisch and the railroad company to have the cars

turned over to him. To this motion the Texas & New Orleans Railroad Company answered, denying that it had received the cars from or paid rental therefor to the Equitable Land & Oil Company; and alleging that the cars had been operated over its road by various parties since they came into the Beaumont oil field, and that defendant was not concerned as to who was the owner; denied that it had at any time any control over said cars, or the routings of same, or interest in directing the points for which the same should be shipped or held; denied that it ever colluded with Kisch or any other person in respect to the cars. It alleged that since the sale of the cars by Tabor, on July 7, 1903, it received notice from Kisch that he had become the purchaser of the cars and was in possession of same, and had been requested by him to make remittance to him of mileage on said cars; that after the receiver demanded of defendant that payment should be made to him, and after the District Court of Jefferson County had issued its injunction against defendant, the defendant, not knowing to whom to make payment, had refused to make payment to any one until the matter of right should be determined; that defendant is not interested in said cars and has never had any concern with them except to obey the law and to transport the cars without discrimination according to the directions of the parties in possession of and operating the same. Upon the filing of said motion an order was made by the court enjoining the Texas & New Orleans Railroad Company from handling the cars out of Jefferson County and from turning them over to the Vulcan Oil Company or Seymour Kisch. Upon being served with the injunction the Railroad Company collected and stored the cars on its tracks. The motion was referred to the master in chancery, who finally reported unfavorably to the receiver, but the court disapproved the report except as to the finding that Kisch, and not the receiver, had actual possession of the cars at the date of the receiver's appointment.

The receiver then brought this suit, and afterwards two motions were filed in the main receivership case, one by Kisch, in which he complained, among other things, that the receiver was collecting some of the mileage due for the cars, and requested the court to direct the receiver to cease the collection of such mileage; and the other by the American Car & Foundry Company, asking that an injunction or restraining order which had theretofore been issued against it to prevent its selling the cars under its deed of trust be dissolved. This restraining order had been issued by the court pending the motion of the receiver to require Kisch to turn over the cars to him, and was intended to prevent the American Car & Foundry Company from foreclosing its deed of trust independent of the court, as was threatened, while the contest for possession was undecided. Upon these two motions the court made and entered a decree which is in part as follows:

"As to the motion of Seymour Kisch, the court is of the opinion that he is entitled to receive all mileage in respect to the operation of the said seventy-five tank cars, the possession of which is in him; and he is furthermore entitled to receive from the Texas & New Orleans Railroad Company whatever amount it may now have in its hands arising from the car mileage or other revenue due from the handling

of said seventy-five tank cars by it; and they are hereby ordered to pay whatever sum they may be due to the said Seymour Kisch and take his receipt for the same. The receiver, R. E. Smith, will discontinue collecting the car mileage or other revenues from said seventy-five tank cars pending the determination of this case, and the Texas & New Orleans Railroad Company and all other railroad companies holding and handling the said cars in the ordinary course of business as common carriers, will pay unto the said Seymour Kisch all mileage and other revenues arising from the use of said cars, and they are hereby fully protected from any liability till this order is changed or modified in this behalf. This decree shall become effective when Seymour Kisch shall execute a bond, payable to R. E. Smith, receiver, in the sum of $5,000, to be approved by the clerk of this court, conditioned that said Kisch will, subject to the contingencies arising out of the rights of the American Car & Foundry Company, have the said seventy-five tank cars in controversy, together with the value of the fruits, hire or revenue thereof, forthcoming to abide the decision of the court in the case of R. E. Smith, Receiver, v. Texas & New Orleans Company et al., and that he will pay the value thereof, and the fruits, hire or revenue of the same in case he shall be held so to do." Kisch executed the bond required by the court and the same was approved by the clerk on June 6, 1904.

The court further decreed a foreclosure of the mortgage of the American Car & Foundry Company upon the cars originally given to it to secure the unpaid purchase price thereof. A sale was made, in pursuance of the decree, to the American Car & Foundry Company, and was reported to the court. The report was approved and the sale confirmed, and the trustee was ordered to make title to the purchaser.

Appellant has presented several assignments of error upon which he seeks a reversal of the judgment of the court below, and the appellee has presented several cross-assignments. We will not discuss these assignments in detail.

The undisputed evidence showing that the cars were not embraced in the mortgage given by the Equitable Land & Oil Company to the National Supply Company, the title to them did not pass to Kisch under the sale made by Tabor, but the title remained in the Equitable Land & Oil Company, and it was entitled to the possession of the cars. When Smith was appointed receiver he succeeded to all the rights of the Equitable Land & Oil Company, including the right to the possession of the cars, and having made proper demand upon the Texas & New Orleans Railroad Company for them, the refusal of said company to turn them over to him, and its express recognition of the right of Kisch to their possession, was a technical conversion of the cars; and, had matters ended here, the railroad company would be liable for the value of their use during the time it withheld possession from the receiver.

But the undisputed evidence shows that, five days after the refusal of the railroad company to recognize Smith as being entitled to the possession of the cars, the latter filed a motion in the receivership proceeding to require the railroad company and Kisch to turn the cars over to him, to which the railroad company answered, explain-

ing the manner in which the cars came into its possession; and that after the receiver had made demand upon it, the defendant, not knowing to whom to make payment of mileage, had refused to make payment to any one until it should be determined to whom payment was due; and that it was not interested in the cars, and had never had any concern with them except to transport them without discrimination according to the directions of the parties operating the same. Upon the final hearing of the motion the court enjoined the railroad company from handling the cars out of Jefferson County or from delivering the same to Kisch.

While it is the law that the railroad company, as bailee, could not resist the claim of the receiver who appears to have been the true owner of the cars (Smith v. Texas & N. O. Railroad Co., 101 Texas, 405), the law allowed it a reasonable time in which to determine its rights by filing a bill of interpleader; and while the railroad company had refused to recognize the receiver's right to possession of the cars, we think that the filing of the answer above referred to, which was in the nature of such a bill, in such a short time after the formal recognition by it of Kisch's title to the cars, should be regarded as a proper effort upon the part of the railroad company to ascertain by interpleader the true owner of the cars in question, and relieves it of liability for the value of the use of the cars from the time the receiver made the demand.

But if this is not true, then we think that the decree of the court made in the receivership case upon the motion of Kisch praying that the railroad company be directed to account to him for the mileage arising from the use of the cars, and upon the motion of the American Car & Foundry Company to dissolve the injunction restraining it from selling the cars under its mortgage, fully protected the railroad company as against any liability to the receiver for the value of the use of the cars. That decree adjudged Kisch to be entitled to receive all the mileage due from the operation of the cars, and that he was entitled to receive from the Texas & New Orleans Railroad Company whatever amount it then had on hand arising from car mileage or other revenue due from the operation of the cars by it or that might thereafter become due, and expressly ordered the railroad company to pay the amount thereof to Kisch, and decreed that the railroad company should be "fully protected from any liability till this order is changed or modified." It does not appear that the order was ever changed or modified. It was further ordered that said decree should become effective when Kisch should execute a bond payable to the receiver conditioned that he would have the cars, together with the value of the fruits, hire or revenue thereof, forthcoming to abide the decision of the court in the present case, and that he would pay the value of the cars and of the fruits, hire or revenue of the same in case "he shall be condemned so to do." The bond was given conditioned as required by the order, and was duly approved. We think that this order should be given the effect that it expressly provided it should have, viz., to fully protect the railroad company in the doing of that which it was directed and required by the court to do; and that when the railroad company turned over to Kisch the value of the

use and hire of the cars in obedience to the order of the court, after Kisch had given the bond, its liability to the receiver ceased. The bond was required and given to secure the receiver for the forthcoming of the cars or their value, and for any amount due him by the railroad for the use of the cars in the event that it should be finally determined that the receiver, and not Kisch, was the owner, and entitled to the possession of them, and the receiver must look to the bondsmen of Kisch for any sum that he may be entitled to arising from the use and operation of the cars.

In view of the foregoing, we think the judgment of the court below in favor of appellee is correct, and that it should be affirmed, and it has been so ordered.

*Affirmed.*

Writ of error refused.